IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NATHAN MANLEY,

    *Plaintiff,*

v.

BRIAN BELLENDIR, INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY AS
SHERIFF OF BARTON COUNTY,
KANSAS and THE BOARD OF COUNTY
COMMISSIONERS OF BARTON
COUNTY, KANSAS,

    *Defendants.*

Case No. 6:18-cv-1220

**MEMORANDUM AND ORDER**

    The Court is presented with Defendants Brian Bellendir and The Board of County Commissioners of Barton County, Kansas' ("The County's") Motion for Judgment on the Amended Pleadings for Plaintiff Nathan Manley's First Amended Complaint (Doc. 29). For the reasons that follow, the motion is granted as to Count I's First, Fifth, Sixth, Seventh, and Eighth Amendment claims and to Counts III, IV, and V. The Court denies the motion as to the remaining counts.

## I. Factual and Procedural Background[1]

Manley was arrested on August 10, 2017, for stealing a propane bottle from the Bellendir's daughter's home and for violating his probation. Bellendir himself made the arrest. Manley maintains that he remained quiet and compliant at all times. Despite this, Manley claims that Bellendir punched him in the side of the head while they were walking to the patrol car. This act allegedly caused him anxiety, a concussion, sleep disorder, suffering and disfigurement, mental and physical disabilities, and loss of income. Manley asserts Bellendir punched him because the victim of the alleged theft was Bellendir's daughter.

Manley filed suit against Bellendir for excessive force (Count I) and assault and battery (Count II) and against the County for assault and battery (Count III), execution of excessive force (Count IV), and attribution of excessive force (Count V). Bellendir and the County moved to dismiss under Rule 12(c), arguing that the Court lacks subject-matter jurisdiction over Count II, the official capacity claims against Bellendir are barred by the Eleventh Amendment, the claims against the Board fail because it does not control Bellendir, the constitutional claims fail as a matter of law, and Bellendir has qualified immunity. Manley amended his complaint (Doc. 26). Bellendir and the County have now filed a Motion for Judgment on the Amended Pleadings, with the subject-matter jurisdiction argument dropped but all others remaining. Manley has failed to respond to this motion, but his response to the earlier motion is applicable here, with the exception of his answer to the subject-matter jurisdiction argument.

---

[1] The facts come from Manley's complaint and are taken as true for the purposes of this ruling.

## II. Legal Standard

The standard for evaluating judgment on the pleadings is the same as that for a motion under Rule 12(b)(6).[2] Under Rule 12(b)(6), a defendant may move for dismissal when the plaintiff has failed to state a claim upon which relief can be granted.[3] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[4] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[5] The court is required to accept the factual allegations in the complaint as true, but is free to reject legal conclusions.[6] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of the claims and the grounds on which the claims rest.[7]

## III. Analysis

### A. Are the Claims Against Sheriff Bellendir in His Official Capacity Barred by the Eleventh Amendment?

Sheriff Bellendir argues that, as a state official, he is protected by the Eleventh Amendment from liability for actions taken in his official capacity. Manley responds that the Eleventh Amendment does not apply as Bellendir is not an officer of the state.

---

[2] *Morris v. City of Colo. Springs*, 666 F.3d 654, 660 (10th Cir. 2012).

[3] Fed. R. Civ. P. 12(b)(6).

[4] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[6] *McKenzie v. Office Depot Store*, 2012 WL 586930, at *1 (D. Kan. 2012).

[7] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

The Eleventh Amendment declares: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." [8] Despite the use of the phrase "Citizens of another State," the Supreme Court has held that the Eleventh Amendment prohibits a suit against a state brought by a citizen of the same state. [9] However, the Eleventh Amendment does not necessarily bar suits against state officials, as long as the suit is against the individual personally and not as a state actor. [10] The Supreme Court articulated the test as follows:

> In the context of lawsuits against state and federal employees or entities, courts look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit. A defendant in an official-capacity action—where the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself—may assert sovereign immunity. But an officer in an individual-capacity action—which seeks "to impose individual liability upon a government officer for actions taken under color of state law"—may be able to assert *personal* immunity defenses but not sovereign immunity. [11]

---

[8] U.S. CONST. amend. XI.

[9] *See Hans v. Louisiana*, 134 U.S. 1, 10, 21 (1890); *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011) ("We have understood the Eleventh Amendment to confirm the structural understanding that States entered the Union with their sovereign immunity intact, unlimited by Article III's jurisdictional grant.").

[10] *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991).

[11] *Lewis v. Clarke*, 137 S. Ct. 1285, 1287 (1991) (internal citations omitted).

In determining whether a person is a state employee, and thus entitled to official-capacity immunity, the court considers four factors (the *Steadfast* factors): (1) how state law characterizes the person, (2) the person's degree of independence, (3) the source of the person's operating funds, and (4) whether the person's duties are concerned primarily with local or state affairs. [12]

As the Kansas Supreme Court is the primary legal authority on the question of whether the sheriff is a state officer, it is necessary to address its statements on the matter. On its face, it seems to have disposed of the issue in *Board of County Commissioners v. Nielander*: "The sheriff is a state officer whose duties, powers, and obligations derive directly from the legislature and are coextensive with the county board." [13] However, it made this statement in the context of holding that the county cannot fire the sheriff's assistants. [14] The court's decision in *Nielander* should not be interpreted to mean that the sheriff acts for the state in his general law enforcement functions. The Supreme Court cautioned against making such a determination "in some categorical, 'all or nothing' manner. Our cases on the liability of local governments under § 1983 instruct us to ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue." [15] Thus the Court must make its own finding of whether the sheriff acts for the state or the county in the context of an arrest.

Courts in this district have diverged on the application of the *Steadfast* factors to the office of county sheriff. A slight majority of them have held, or simply assumed, that the county sheriff

---

[12] *Reyes v. Bd. of Cty. Comm'rs of Sedgwick Cty.*, 2008 WL 2704160, at *7 (D. Kan. 2008); *Steadfast Ins. v. Agric. Ins.*, 507 F.3d 1250, 1253 (10th Cir. 2007).

[13] *Bd. Of Cty. Comm'rs v. Nielander*, 275 Kan. 257, 261-62 (2003).

[14] *Id.*

[15] *MacMillan v. Monroe Cty.*, 520 U.S. 781, 785 (1997).

is an agent of the state and protected by the Eleventh Amendment.[16] Others have concluded his employment is instead with the county.[17] Among the former category, only one has analyzed the issue in depth: *Myers v. Brewer.*

The sheriff in *Myers* asserted sovereign immunity in a claim arising from a shooting during the course of an arrest.[18] The court agreed with him, using an analysis of the *Steadfast* factors.[19] The court found the first factor, the way state law characterizes the officer, to weigh toward the state because the sheriff's office is created by the Kansas legislature and the sheriff does not report to the county.[20]

The second factor is the sheriff's degree of autonomy. The sheriff enjoys significant freedom from the constraints of the county. He is independently elected.[21] The board of county commissioners cannot control his employment or that of his deputies.[22] Nor can the county determine how the sheriff uses his funds.[23] The court thus found that this factor weighed toward the state.[24]

---

[16] *Myers v. Brewer*, 2018 WL 3145401, at *6 (D. Kan. 2018); *Hunter v. Young*, 238 Fed. App'x 336, 338 (10th Cir. 2007); *Broyles v. Marks*, LEXIS 85486, at *9 (D. Kan. 2018); *McHenry v. City of Ottawa*, 2017 WL 4269903, at *11-12 (D. Kan. 2017); *Stewart v. Advanced Corr. Healthcare, Inc.*, 2017 WL 2985750, at *5 (D. Kan. 2017); *Self v. Cty.of Greenwood*, 2013 WL 615652, at *3 (D. Kan. 2013); *Brown v. Kochanowski*, 2012 WL 4127959, at *9 n. 3 (D. Kan. 2012).

[17] *Reyes*, 2008 WL 2704160 at *7-9; *see also Trujillo v. City of Newton*, 2013 WL 535747, at *10 (D. Kan. 2013); *Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241, 1249 n.23 (D. Kan. 2004); *Estate of Holmes v. Somers*, 2019 WL 1670796, at *14 (D. Kan. 2018).

[18] *Myers*, 2018 WL 3145401 at *5.

[19] *Id.* at *6.

[20] *Id.*

[21] *Id.*

[22] *Id.* (citing *Nielander*, 63 Kan. at 261-62).

[23] *Id.*

[24] *Id.*

The third factor is the source of the sheriff's funding, and the fourth is whether the sheriff's duties are state or local in nature. The court dismissed these factors as "not significant," because "even if the county funds the sheriff's operations and the sheriff has relatively limited geographical authority, these factors were the same for county attorneys in *Nielander*, and the Tenth Circuit determined they were entitled to Eleventh Amendment immunity."[25] The court thus found that the sheriff was a state official and protected by the Eleventh Amendment.[26]

On the other hand, the court in *Reyes v. Board of County Commissioners*[27] used the *Steadfast* factors to conclude that the county sheriff does not act for the state in the context of determining policy for prisoners on warrants from the county. The court in *Estate of Holmes v. Somers*[28] extended this reasoning to "local law enforcement activities," including arrests.

The first factor is the way state law designates the defendant. The sheriff's position is listed as a "county office."[29] Kansas law dictates that the sheriff can only act outside of the county when officers of another county so request or when in fresh pursuit of a subject.[30] The purpose of this law is to "protect the local autonomy of neighboring cities and counties, allowing each governmental unit to control the exercise of police powers within its respective jurisdiction."[31]

---

[25] *Id.* Note that the "*Nielander*" referred to here is not the same *Nielander* cited above. In this *Nielander*, the Tenth Circuit held that the county attorney was entitled to absolute immunity by virtue of being a prosecutor, independent of the Eleventh Amendment. *Nielander v. Bd. of Cty. Comm'rs*, 582 F.3d 1155, 1164 (10th Cir. 2009). It then went on to note that "though not raised by the defendants in this case, Eleventh Amendment immunity would shield [the county attorney] from liability in his official capacity." *Id.* It did not cite the *Steadfast* factors in this brief analysis. *See id.*

[26] *Myers*, 2018 WL 3145401 at *6.

[27] *Reyes*, 2008 WL 2704160 at *6-8.

[28] *Holmes*, 2019 WL 1670796 at *15.

[29] *Reyes*, 2008 WL 2704160 at *7; K.S.A. § 25-101.

[30] *Holmes*, 2019 WL 1670796 at *15; K.S.A. § 22-2401a.

[31] *Holmes*, 2019 WL 1670796 at *15 (quoting *State v. Vrabel*, 301 Kan. 797, 798 (2015)).

This means that the state does not control law enforcement policies.[32] Thus the courts in *Reyes* and *Holmes* found that the first *Steadfast* factor weighs toward the county.[33]

The second factor is the sheriff's level of autonomy. *Reyes* and *Holmes* identified multiple ways in which the sheriff had freedom from the state. Sheriffs "enjoy autonomy in personnel decisions within their departments, and the sheriff has charge of the county jail."[34] In addition, the sheriff has the power to set the policy of his office, including the use of force.[35] Thus the courts have held that the second factor weighs in favor of employment with the county.

The third factor is the source of the sheriff's funding. The sheriff's budget is approved by the board of county commissioners and his funds are allocated by the county.[36] In the courts' view, this "clearly supports a finding that the sheriff is not an arm of the state."[37]

The fourth factor is the state or local nature of the sheriff's duties. *Reyes* and *Holmes* found this factor weighs toward the county as well. "Kansas statutes authorize sheriffs and their deputies to conduct law enforcement activities within their counties; they may act elsewhere in the state only in fresh pursuit of a suspect or if another agency requests assistance . . . the geographical limitation on a county sheriff's law enforcement powers suggests that the agency is local in nature."[38]

---

[32] *Id.* at 16.

[33] *Id.* at *15-16; *Reyes*, 2008 WL 2704160 at *7.

[34] *Reyes*, 2008 WL 2704160 at *8.

[35] *Holmes*, 2019 WL 1670796 at *17.

[36] *Id.*; K.S.A. § 19-805(a), (b), (c).

[37] *Id.*

[38] *Reyes*, 2008 WL 2704160 at *8.

The Court finds the *Reyes* and *Holmes* contingent of cases persuasive and concludes that the sheriff acts for the county when making arrests. The first factor supports this finding: although the sheriff's duties are prescribed by the state, he is listed as a county officer and does his usual police work within the county, consistent with Kansas' view of law enforcement as the domain of the county, not the state. As a general matter, he enjoys wide discretion in his affairs and is not directly controlled by either the county or the state, so the second factor is weightless. The third and fourth factors clearly indicate county employment: the sheriff operates on a budget determined by the county and he does his policework within the county (including his actions here).[39]

Based on an analysis of the *Steadfast* factors, the Court concludes that Sheriff Bellendir is not an agent of the state and thus not entitled to Eleventh Amendment immunity. The official-capacity claims against him are allowed to continue.

**B. Does the Excessive Force Complaint State a Claim for Relief Under the First, Fifth, Sixth, Seventh, or Eighth Amendments?**

Manley alleges in Count I (excessive force) that Sheriff Bellendir has violated his constitutional rights, specifically under the First, Fourth, Fifth, Sixth, Seventh, and Eighth Amendments. Bellendir argues that excessive force claims are appropriate only under the Fourth Amendment and the complaint asserts no facts leading to a violation of any other amendment.

---

[39] The Court is not persuaded by *Myers'* assertion that the third and fourth factors are irrelevant because "these factors were the same for county attorneys in *Nielander*, and the Tenth Circuit still held that they were entitled to Eleventh Amendment immunity." *Myers*, 2018 WL 3145401 at *8. The *Nielander* court did not cite the *Steadfast* factors at all and determined that the county attorney had immunity for an independent reason. *Nielander*, 582 F.3d at 1164. It is not relevant to this case.

The First Amendment protects freedom of speech, religion, and association.[40] The complaint does not allege that Bellendir's use of excessive force prevented him from exercising these rights. Accordingly, it fails to state a claim for relief under the First Amendment.

The Fifth Amendment forbids the deprivation of "life, liberty, or property, without due process of law."[41] The courts have made clear that the proper constitutional claim for excessive force during an arrest is not the Due Process Clause, but the Fourth Amendment's prohibition on unreasonable searches and seizures.[42] Therefore, Manley's Fifth Amendment claim cannot survive.

The Sixth Amendment upholds the rights of the accused to a speedy trial, impartial jury, knowledge of the accusation against him, and assistance of counsel.[43] The Seventh Amendment preserves the right to a jury trial.[44] Nothing in Manley's complaint plausibly reveals a violation of either amendment. Finally, the Eighth Amendment is a bar on excessive fines and cruel and unusual punishments.[45] It applies only to convicted prisoners, not suspects being arrested.[46] Manley, as a mere arrestee, cannot state a claim for relief under the Eighth Amendment.

---

[40] U.S. CONST. amend. I.

[41] U.S. CONST. amend. V.

[42] *Graham v. Connor*, 490 U.S. 386, 394 (1989) ("Where, as here, the excessive force arises in the context of an arrest…it is most properly characterized as one invoking the protections of the Fourth Amendment."); *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014); *Smith v. Delamaid*, 842 F. Supp. 453, 458 (D. Kan. 1994).

[43] U.S. CONST. amend. VI.

[44] U.S. CONST. amend. VII.

[45] U.S. CONST. amend. VIII.

[46] *Caldwell v. Kansas*, 2014 WL 1930957, at *7 (D. Kan. 2014) (citing *Ingraham v. Wright*, 430 U.S. 651, 671 (1977)).

No reasonable construction of the facts can lead to relief under any amendment but the Fourth. The First, Fifth, Sixth, Seventh, and Eighth Amendment complaints against Sheriff Bellendir are hereby dismissed.

**C. Can the County Be Held Liable for the Acts of Sheriff Bellendir as a Matter of Law?**

Manley alleges, in Counts III, IV and V, that the County is liable under the *respondeat superior* theory for the excessive force and assault and battery claims against Bellendir. The County responds that it has no duty to control Bellendir and no power to fire him.

While Bellendir is an employee of the County (or, more relevantly, not an employee of the state) for the purposes of Eleventh Amendment immunity, it does not follow that the County is liable for Bellendir's actions under *respondeat superior*. The Kansas Supreme Court has held that "a local government cannot be held liable for violation of civil rights under 42 U.S.C. § 1983 on the basis of a respondeat superior theory. Local governments are only liable when execution of a government policy or custom inflicts the injury." [47] While Manley alleges that the County gave Bellendir its "knowledge, approval, and ratification," he does not claim that Bellendir's actions were part of a policy or custom of the County. Accordingly, the County cannot be held liable under *respondeat superior.*

Manley further alleges that the County was negligent in failing to "select, screen, train, supervise, educate, observe, monitor, test, and instruct" Bellendir. If proven, this would be a wrong done by the County itself, and *respondeat superior* would be unnecessary. However, the County lacks the legal power to do any of the alleged negligent acts. Both parties note, albeit for different reasons, that "the sheriff is an independently elected officer whose office, duties, and authorities

---

[47] *Alvarado v. City of Dodge City*, 238 Kan. 48, Syl. 2 (1985).

are established and delegated by the legislature."[48] The County does not have the power to choose, oversee, or control the sheriff.[49] The County cannot plausibly be held liable for the actions of Bellendir.

## IV. Conclusion

The First, Fifth, Sixth, Seventh, and Eighth Amendment claims in Count I are dismissed because the Fifth Amendment does not apply to a claim of excessive force during an arrest and the complaint alleges no facts showing a violation of any other Amendment except the Fourth. The remaining official-capacity claims against Sheriff Bellendir in Counts I and II are not dismissed because Sheriff Bellendir is not an arm of the state and thus not entitled to Eleventh Amendment immunity. The County is entitled to dismissal on Counts III, IV, and V because it does not have control over the actions of Sheriff Bellendir.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Judgment on the Amended Pleadings (Doc. 29) is hereby **GRANTED AS TO COUNTS III, IV, AND V AND THE FIRST, FIFTH, SIXTH, SEVENTH, AND EIGHTH AMENDMENT CLAIMS IN COUNT I. IT IS OTHERWISE DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motion for Judgment on the Pleadings (Doc. 17) is hereby **DENIED AS MOOT.**

---

[48] *Nielander*, 257 Kan. at 261.

[49] *Blume v. Meneley*, 283 F. Supp. 2d 1171, 1174-75 (D. Kan. 2003).

**IT IS SO ORDERED.**

Dated this 30th day of July, 2019.

                                                ERIC F. MELGREN
                                                UNITED STATES DISTRICT JUDGE